**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Dana Advocaat, both individually and as Trustee of the Advocaat Living Trust dated March 7, 2019, Respondent,

v.

Community Services Associates, Inc., Appellant.

Appellate Case No. 2020-001500

_____

Appeal From Beaufort County
Brooks P. Goldsmith, Circuit Court Judge

_____

Unpublished Opinion No. 2024-UP-082
Submitted February 1, 2024 – Filed March 20, 2024
Withdrawn, Substituted, and Refiled May 22, 2024

_____

**AFFIRMED**

_____

Benjamin Edward Nicholson, V, of Burr & Forman, LLP, of Columbia; Douglas Walker MacKelcan, III, and Skyler Cole Wilson, both of Copeland, Stair, Valz & Lovell, LLP, of Charleston, and Michael Christopher Masciale, of O'Reilly Law Firm, LLC, of Charleston, for Appellant.

Ian S. Ford and Ainsley Fisher Tillman, both of Ford Wallace Thomson, LLC, of Charleston, for Respondent.

_____

**PER CURIAM:** Community Services Associates, Inc. (CSA), appeals the circuit court's order granting the motion of Dana Advocaat, a resident of Sea Pines Plantation (Sea Pines) on Hilton Head Island, individually, and as Trustee of the Advocaat Living Trust dated March 7, 2019 (Advocaat), requesting to inspect CSA's corporate records. We affirm.

**FACTS**

CSA is a nonprofit corporation, organized pursuant to the South Carolina Nonprofit Corporation Act (the Act), for the purpose of managing and maintaining the common areas within Sea Pines. The common areas include roads, as well as gates for entrance and exit into the development. One of CSA's responsibilities is to run and control the gates into the community, pursuant to the Sea Pines Plantation Gate Policy (the Policy). Outside visitors are charged fees at the gate, and the gate fees are a significant source of revenue for the community. The administration of the Policy, and the use of gate fees, are governed by the CSA governing documents, which included covenants, declarations, articles of incorporation, and bylaws. The governing documents expressly state that "[a]ll gate fees collected . . . shall be contributed to and used for community services."

Advocaat filed this action against CSA, alleging CSA violated the South Carolina Homeowners' Association Act by failing to record the Gate Pass Agreement (the Agreement) with the Register of Mesne Conveyance and further alleged entitlement to inspect and copy CSA's corporate records, including the Agreement, its amendments, and other related material. The Agreement controls the amount of the fees and dictates the manner in which those fees are to be spent. The Agreement, referenced and incorporated into the 1988 Declaration for Sea Pines, is an agreement between CSA and two of its commercial members, the Sea Pines Resort, LLC, and the Sea Pines Center Associates, LLC. The Agreement had previously been disclosed by CSA to its members; however, in 2018, CSA entered into an Amendment to the Agreement. The 2018 Amendment pertained to the prices of gate entry fees from 2018 through 2021. CSA refused to allow its members to inspect the 2018 Amendment to the Agreement; thus, Advocaat filed this action.

In her discovery requests, Advocaat requested the Policy, the Agreement, and any amendments to the Agreement. CSA refused to produce the Amendment, claiming, *inter alia*, executive privilege. Advocaat moved to inspect the corporate records, alleging entitlement to inspection based on the Act. At a hearing on the

motion, Advocaat argued the gates fees totaled approximately $3 million per year and could not "just be spent for anything." She argued CSA disagreed with her interpretation of how the money could be spent, but the parties did not need for that to be "decide[d] . . . today." Advocaat further argued prior gate agreements were always disclosed; a board member recused himself from voting on the 2018 Amendment, which indicated a problem; a draft of the Amendment was leaked; and the draft indicated problems such as diverting funds to a marketing fund and other allegedly improper actions. In addition, CSA communicated portions of the Amendment to Sea Pines owners, including announcing and explaining the gate fee increases as the "largest ongoing revenue increase to any CSA revenue source ever made." The communication also provided a history of the agreements, a summary of the revenue, and answered "Frequently Asked Questions" regarding the Agreement. Advocaat argued she was entitled to review the Amendment under the Act. In addition, she argued she had common law property rights entitling her to review the document.

CSA argued Advocaat misinterpreted the Amendment by arguing it was "somehow improper because it expand[ed] the scope of services for which gate fees [could] be used . . . ." CSA next argued the Amendment was not a bylaw subject to the Act. CSA argued the Amendment was merely a contract between CSA, the Sea Pines Resort, and the Sea Pines Center and not part of Sea Pines' governing documents. CSA also maintained the contract was not part of its accounting records; thus, not controlled by the Act. Finally, CSA argued the board member's recusal was proper under the Act and not indicative of any impropriety.

The circuit court granted the motion and denied CSA's motion to alter or amend. In its order, the circuit court found Advocaat was entitled to inspect the Agreement and any amendments under the Act because they were bylaws as defined by the Act. Relying in part on an opinion of the South Carolina Attorney General, the court also found the documents constituted accounting records under the Act; thus, Advocaat was entitled to inspect them. Next, the court found Advocaat had a right to inspect the documents under the common law because they impacted her property rights. Finally, the court found the documents were not covered by CSA's purported executive privilege and they were discoverable under Rule 34 of the South Carolina Rules of Civil Procedure. The court denied CSA's motion to reconsider. This appeal followed.

**STANDARD OF REVIEW**

The parties disagree on the standard of review. CSA cites the standard of review governing the interpretation of a statute, which this court reviews de novo. *See Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008) ("Determining the proper interpretation of a statute is a question of law, and th[e appellate c]ourt reviews questions of law de novo."). Advocaat argues the order on appeal is in the nature of a writ of mandamus, which is to be reviewed by this court for abuse of discretion. However, "[a] writ of mandamus is a coercive writ that orders a public official to perform a ministerial duty." *Ex parte Littlefield*, 343 S.C. 212, 222, 540 S.E.2d 81, 86 (2000). Here, there is no public official involved and we find the order is injunctive in nature; thus, we agree with Advocaat that the standard of review is abuse of discretion. *See Hook Point, LLC v. Branch Banking & Tr. Co.*, 397 S.C. 507, 510, 725 S.E.2d 681, 683 (2012) ("The grant of an injunction is reviewed for abuse of discretion.").

**LAW/ANALYSIS**

CSA first argues the circuit court erred in finding the Agreement was a bylaw or an accounting record under the Act. We disagree.

Section 33-31-1601 of the Act provides as follows:

> (a) A corporation shall keep as permanent records minutes of all meetings of its members and board of directors, a record of all actions taken by the members or directors without a meeting, and a record of all actions taken by committees of the board of directors . . . .
> (b) A corporation shall maintain appropriate accounting records.
> (c) A corporation or its agent shall maintain a record of its members in a form that permits preparation of a list of the name and address of all members, in alphabetical order by class, showing the number of votes each member is entitled to cast.
> (d) A corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.
> (e) A corporation shall keep a copy of the following records at its principal office:

> (1) its articles or restated articles of incorporation and all amendments to them currently in effect;
> (2) its bylaws or restated bylaws and all amendments to them currently in effect;
> (3) resolutions adopted by its board of directors relating to the characteristics, qualifications, rights, limitations, and obligations of members or any class or category of members;
> (4) the minutes of all meetings of members and records of all actions approved by the members for the past three years;
> (5) all written communications to members generally within the past three years, including the financial statements furnished for the past three years under Section 33-31-1620;
> (6) a list of the names and business or home addresses of its current directors and officers; and
> (7) its most recent report of each type required to be filed by it with the Secretary of State under this chapter.

S.C. Code Ann. § 33-31-1601 (2006).  Section 33-31-140 defines "bylaws" as  "the code or codes of rules, other than the articles, adopted pursuant to this chapter for the regulation or management of the affairs of the corporation irrespective of the name or names by which the rules are designated."  S.C. Code Ann. § 33-31-140(4) (2006).

We agree with the circuit court that because the documents were "adopted by CSA to regulate and manage the affairs of the corporation (namely the regulation and management of the gates to the community, and the fees associated therewith), the requested records are corporate bylaws."  In addition, we agree that Advocaat, as a member of CSA, has the right to inspect the documents.  Section 33-31-1602 of the Act provides a member of a nonprofit corporation with entitlement to inspect and copy records of the corporation.  S.C. Code Ann. § 33-31-1602(a) (2006).  "If a corporation does not allow a member . . . to inspect and copy any records required . . . to be available for inspection, the circuit court . . . may summarily order

inspection and copying of the records . . . ."  S.C. Code Ann. § 33-31-1604(a) (2006).

We also agree with the circuit court that the documents are accounting records, "in that they are documents that underl[ie] the finances of CSA and/or they are materials used to prepare CSA's financial and accounting statements."  As noted by the court, "CSA has provided its members with a history of the 2018 Amendment, including a detailed 'description of the various assigned rights, CSA history and financial impacts of Sea Pines['] gate fee changes over the years.'  It is clear from CSA's own communications to its members that the documents [Advocaat] seeks to inspect are very much accounting records of the corporation, profoundly affecting its finances."  The Act does not define "accounting records"; thus, the circuit court relied in part on an opinion of the South Carolina Attorney General's Office, which provides:

> [W]e believe that Legislative intent was for *any and all* underlying documents or materials used to prepare a non-profit corporation's financial statements to be inspected by a member as long as the member provides written notice, the member's demand is in good faith and for a proper purpose, the member specifically describes the purpose and the records he wants to inspect, and the records are directly connected with the purpose.

S.C. Atty. Gen. Op. dated Jan. 26, 2016, at 4 (2016 WL 963698).

We find no error by the circuit court in finding the Amendment was either a bylaw or an accounting record.  We also agree Advocaat had the right to inspect the Amendment.[1]

Finally, CSA argues the circuit court erred in relying on Rule 34 of the South Carolina Rules of Civil Procedure in finding the Amendment was not subject to privilege.  CSA argues the analysis of whether Rule 34 requires production of a

---

[1] CSA also argues the circuit court erred in finding Advocaat had a common law property right to inspect the Agreement because it infringed on her property rights. The circuit court cited no authority to support its finding on this issue and we decline to address it.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address an appellant's remaining issues when the determination of a prior issue was dispositive).

document is distinct from whether the Act requires a party to make a document available and Advocaat may not use the Act as a "backdoor to a motion to compel." Finally, CSA argues even if Advocaat had moved to compel under Rule 37, SCRCP, she still is not entitled to an order compelling production of the gate agreement because the document sought is the ultimate question of the litigation, not merely a document relevant to the litigation.

Rule 34 of the South Carolina Rules of Civil Procedure provides, *inter alia*, a litigant the right to serve requests to produce on another party for the purposes of inspecting or copying designated documents. Discovery requests must seek documents that are "relevant to the subject matter involved in the pending action." Rule 26(b)(1), SCRCP. A party may withhold information "otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material . . . ." Rule 26(b)(5)(A), SCRCP. "An evidentiary privilege '. . . allows a specified person to refuse to provide evidence or to protect the evidence from being used or disclosed in a proceeding.'" *Hartsock v. Goodyear Dunlop Tires N. Am. Ltd.*, 422 S.C. 643, 647, 813 S.E.2d 696, 698-99 (2018) (quoting *Evidentiary Privilege*, Black's Law Dictionary (10th ed. 2014)). Rule 37 provides "[a] party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery . . . ." Rule 37(a), SCRCP.

The Act provides a member the right to inspect records. S.C. Code Ann. § 33-31-1602(a) (2006). The Act further provides, however, that "[t]his section does not affect: (1) the right of a member to inspect records . . . , if the member is in litigation with the corporation, to the same extent as any other litigant"). S.C. Code Ann. § 33-31-1602(d) (2006). CSA argues once it declined to make the Amendment available to Advocaat, Advocaat was required to move for an order compelling production under Rule 37(a) of the South Carolina Rules of Civil Procedure.

We find no impropriety by the circuit court in treating Advocaat's complaint, which sought "inspection of corporate records" and alleged "violation of the . . . Act," as a motion to compel the document under the South Carolina Rules of Civil Procedure or as the invocation of the right to inspect under the Act. Under either law, Advocaat was entitled to the relief the circuit court granted.

It is a well-recognized legal concept in South Carolina that pleadings and motions should be treated based on substance and effect as opposed to how they are styled by the moving party. *See Mickle v. Blackmon*, 255 S.C. 136, 140, 177 S.E.2d 548,

549 (1970) (treating a motion for its substance and effect rather than how it was styled); *Richland County v. Kaiser*, 351 S.C. 89, 94, 567 S.E.2d 260, 262 (Ct. App. 2002) (finding "[i]t is the substance of the requested relief that matters 'regardless of the form in which the request for relief was framed'" (quoting *Standard Fed. Sav. & Loan Ass'n v. Mungo*, 306 S.C. 22, 26, 410 S.E.2d 18, 20 (Ct. App. 1991))); *see also Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 536, 787 S.E.2d 485, 495 (2016) ("A trial court's rulings in matters related to discovery generally will not be disturbed on appeal in the absence of a clear abuse of discretion."). We find no error by the circuit court.

**AFFIRMED.**[2]

**THOMAS, MCDONALD, and VERDIN, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.